**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **FERNANDO LOZANO,** | § | |
| Petitioner | § | |
| **V.** | § | **A-21-CR-71-RP** |
| | § | **A-24-CV-111-RP-ML** |
| **UNITED STATES OF AMERICA,** | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court is Petitioner Fernando Lozano's Verified Petition for Writ of Habeas Corpus (Dkt. 55), the Government's Response (Dkt. 63), and Petitioner's Reply (Dkt. 65). After reviewing the pleadings and the relevant case law, the undersigned submits the following Report and Recommendation to the District Court.

**I.    BACKGROUND**

In January 2018, a Minor Victim ("MV") and her mother reached out to law enforcement about MV's online interactions with Fernando Lozano. Dkt. 37 (PSR) ¶ 5. According to MV, Lozano began communicating with her seven to eight years earlier, when she was 10 or 11 years old. *Id.* Soon after they began communicating, Lozano requested nude images of MV, which she provided. *Id.* Lozano also provided nude images of himself. Id. Over the years, Lozano would find MV on new social media platforms. *Id.* ¶ 9. When MV would attempt to ignore Lozano's request for more nude images of herself, Lozano variously threatened to travel to her home state and rape her, physically punish her, and publish her nudes for others to see, including her classmates. *Id.* ¶¶ 7-9.

On May 15, 2018, agents executed a search warrant and seized eight electronic devices from Lozano's bedroom. *Id*. ¶ 17. All but one device contained child pornography. *Id*. The devices contained a total of 11,855 digital images and 251 digital videos constituting child pornography. *Id*. The videos included depictions of:

- a female minor (approximately 10 years old) engaging in masturbation and lascivious exhibition of the genitals by penetrating herself with an unknown cylinder vaginally and anally;

- an adult female engaging in oral-genital sexual intercourse with a female minor approximately 5-years old;

- a masked adult male engaging in masturbation and oral-genital sexual intercourse vaginally and anally with a female minor approximately 5-7 years of age;

- a female minor (approximately 9 years old) whose arms and legs are bound engaging in masturbation, sadistic and masochistic abuse, and oral-genital sexual intercourse with an adult male;

- an adult male engaging in oral-genital sexual intercourse with a female minor approximately 9-10 years of age;

- an unknown male performing anal and vaginal penetration on a prepubescent female, approximately two years old, while standing in a bathtub;

- a prepubescent female, approximately 2 to 4 years old, laying on her back, while an unknown adult inserts a purple object into her vagina;

- an infant, and a male pushing his penis into the infant's mouth and ejaculating;

- a child performing oral sex on an unknown type of animal.

*Id*. ¶¶ 19-30.

In April 2021, Lozano was finally named in a one-count Information and pleaded guilty to Possession of Child Pornography (Enhanced) under 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Dkt. 1, 3. Notably, despite his role in the creation of MV's nude images, Lozano was not charged with the manufacture of child pornography. His retained counsel and the Government negotiated the charge and plea before the Information was filed. Dkt. 58 (Plea Tr.) 7:2-4 ("Mr. Devlin and I discussed the plea and the count of the information that was going to be filed. That was all worked out . . . ."). The maximum sentence Lozano faced was 20 years. 18 U.S.C. § 2252A(b)(2).  His guideline range was 210 to 240 months. PSR ¶ 73. Statutorily, he faced at least 5 years supervised release, with a guideline range of 5 years to life. *Id*. ¶ 76. He was sentenced to a term of 130 months imprisonment followed by 10 years of supervised release. Dkt. 50.

Consistent with the appeal waiver in his Plea Agreement, Lozano did not file a direct appeal. Through new retained habeas counsel, he brings this 2255 motion arguing his initial counsel ("Counsel") was ineffective.

## II.    ISSUE PRESENTED

Lozano presents one claim:

> Petitioner was deprived of his constitutional right to the effective assistance of counsel in violation of Petitioner's rights under the Sixth Amendment to the United States Constitution in circumstances where trial counsel, through his failure to investigate Petitioner's case, caused Petitioner to enter into an unknowing, involuntary, and unintelligent plea agreement which caused him to waive his right to appeal. Moreover, Petitioner's sentence is procedurally and substantively unreasonable and he would have had a reasonable likelihood of prevailing on direct appeal.

Dkt. 55-1 at 4.

## III.    STANDARD OF REVIEW

Under section 2255, there are generally four grounds upon which a defendant may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the

Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under section 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). However, a defendant's ineffective assistance of counsel claim does create a constitutional issue and is cognizable pursuant to Section 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

A § 2255 motion requires an evidentiary hearing unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true. *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018), as revised (Dec. 19, 2018); *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979).

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case reasonably effective assistance of counsel. U.S. CONST. amend VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a movant must satisfy the two-part test enunciated in *Strickland v. Washington*. 466 U.S. 668,

687 (1984).  First, he must demonstrate counsel's performance fell below an objective standard of reasonableness.  *Id*.  Under this standard, counsel must "research relevant facts and law, or make an informed decision that certain avenues will not be fruitful."  *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003).  The effectiveness of an attorney's representation must be gauged "on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. A court will not find ineffective assistance merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Whether counsel's performance was deficient is determined by examining "the law as it existed" at the time of the representation. *See id.* "[C]ounsel is not ineffective for failing to raise a claim that courts in the controlling jurisdiction have repeatedly rejected . . . or even for not rais[ing] every nonfrivolous ground that might be pressed on appeal." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (internal quotations and citations omitted).

Second, movant must prove he was prejudiced by counsel's substandard performance. "[T]o prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Conley*, 349 F.3d at 841-42. When a movant fails to meet either requirement of the *Strickland* test, his ineffective assistance of counsel claim is defeated. *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1995); *United States v. Gaudet*, 81 F.3d 585, 591-92 (5th Cir. 1996). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Fields*, 761 F.3d 443, 453 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689)). Additionally, courts presume that counsel's "challenged action might be considered sound trial strategy." *Belyeu*, 67 F.3d at 538 (citing *Strickland*).

## V.    ANALYSIS

Although Lozano presents one claim, he raises several issues. Lozano takes umbrage with the Government's difficulty understanding his claim. The Government's confusion is warranted. Lozano's motion describes various complaints with Counsel's representation without explicitly explaining why those complaints entitle him to relief. Lozano's reply brief provides better context for his arguments, but the Government lacked the opportunity to respond to his rehabilitated arguments. Accordingly, the court will address the issues as it understands them.

Lozano asserts that Counsel's failure rendered his guilty plea and appeal waiver unknowing and involuntary. "[F]or a guilty plea to be knowing, the defendant must have a 'full understanding of what the plea connotes and of its consequence.'" *United States v. Lincks*, 82 F.4th 325, 331 (5th Cir. 2023) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). At a minimum, a guilty plea's sentencing consequences include the maximum sentence for the offense charged. *Id*. (citing *United States v. Hernandez*, 234 F.3d 252, 255–56 (5th Cir. 2000) (per curiam)). The "knowing" and "voluntary" requirements "embody different concepts." *Id*. Volition in guilty pleas comes into doubt when the plea is induced by threats, improper coercion, false or empty promises, and the like. *Id*. "Knowledge" generally implicates a factual understanding of the essential components and consequences of a guilty plea. *Id*.

Several of Lozano's arguments assert Counsel failed to adequately investigate the case. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). More specifically, a defendant must "suggest with specificity what exculpatory evidence could have been uncovered by a more

thorough investigation by his counsel." *Id*. Further, the defendant must allege how that evidence would have helped him. *Id*.

Other arguments contradict statements he made in open court to support his Plea Agreement. A defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). If, however, the defendant offers specific factual allegations supported by the affidavit of a reliable third person, then he is entitled to a hearing on his allegations. *Id*. When seeking relief based on an alleged promise made by defense counsel, a defendant must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998).

Still other arguments contradict facts stated in the PSR. "Generally, a PSR bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines." *United States v. Gentry*, 941 F.3d 767, 788 (5th Cir. 2019) (citing *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999)). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Huerta*, 182 F.3d at 364. Additionally, a "defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id*. (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

Finally, many of his arguments are simply factually inaccurate.

First, Lozano argues Counsel failed to adequately investigate MV's age. Relying on his own Declaration, Lozano asserts MV "was at least fifteen or sixteen" when they began communicating. Dkt. 55-2 (Lozano Decl.) ¶ 2. Lozano argues this would have resulted in a significant reduction of his sentence because her age led to enhanced charges and sentence. Lozano is simply factually wrong. MV was not described in the Information. Dkt. 1. MV is described in the factual basis of the Plea Agreement as born in 2001. Dkt. 3 ¶ 4a. As part of the factual basis, the Plea Agreement describes six videos found on Lozano's devices. Dkt. 3 ¶ 4d. Although the specific ages of the minor victims are not described in Plea Agreement, they are the same as the first six videos identified above, all of which were very young children, justifying the enhancement. The Plea Agreement states that "one or more images and videos of child pornography involve in the offense involved a prepubescent minor who had not attained 12 years of age." Dkt. 3 ¶ 4f. Lozano agreed that all facts contained in the Plea Agreement's Factual Basis were true and correct. Dkt. 3 at 10; Plea Tr. 11:24-12:12. Accordingly, the enhancement at issue was justified regardless of MV's age.[1] Lozano has not shown his counsel was ineffective.

Next, Lozano argues Counsel failed to effectively communicate the potential sentence he would face by pleading guilty. He claims Counsel variously stated he would receive five years and seven years of incarceration or three years of probation. However, at the plea hearing the court informed Lozano of the maximum possible penalties, and Lozano twice stated he understood those. Dkt. 58 (Plea Tr.) 6:7-18; 14:2-5. Lozano also stated that he understood that no one could know, and he did not know, what his sentence would be, other than it would not be greater than 20 years.

---

[1] Lozano's assertion that MV "was at least fifteen or sixteen" when they began communicating is inconsistent with the record. In the Plea Agreement, he admitted MV was born in 2001 and came forward to law enforcement in January 2018. Dkt. 3 ¶ 4a. In his letter to the court, Lozano stated his communications with her "took place over 4-5 years." Dkt. 34 at 36. Accordingly, by his own admission, MV was no older than 12-13 when he first messaged her.

The PSR describes MV as approximately 10 or 11 years old when Lozano began communicating with her in about 2010. PSR ¶ 5.

*Id*. 15:24-16:3. Lozano has failed to adequately impeach his testimony at the plea hearing. Lozano has not shown his counsel was ineffective.

Lozano contends Counsel misinformed him that if he pled guilty "the prosecution would not charge him with communicating with [MV]," but his "communication with [MV] was used to enhance [his] sentence, and counsel did not inform him that this was a possibility." Dkt. 55-1 at 14. Lozano is factually inaccurate here. He was not separately charged with communicating with MV, and the Plea Agreement prohibits the Government from bringing any charges for communicating with MV or soliciting child pornography from her. Dkt. 1; Dkt. 3 ¶ 5. But his communications with MV were described in the PSR and considered in reaching his guideline range. PSR ¶¶ 5-10, 37. Lozano has not shown his counsel was ineffective.

Lozano asserts Counsel failed to advise him that the two years he spent under "house arrest" and electronic monitoring would not count towards his sentence and if he had known that he would have insisted on a trial. In the time between his Plea Agreement and sentencing, Lozano was subject to conditions of release, in which he was restricted to his residence at all times, except for employment, education, religious services, medical and mental health treatments, attorney visits, court appearances and obligations, and other activities approved by the pretrial services office. Dkt. 9 at 2. He was also permitted daily living activities, such as trips to the grocery store, haircuts, or car repair. Plea Tr. 41:11-16. Again, Lozano testified at the plea hearing that he understood "no one can know, and [he did] not know, what [his] eventual sentence will be other than it won't be greater than 20 years." Plea Tr. 15:24-16:3. He was asked if had any questions about sentencing, and he answers that he did not. *Id*. 16:4-7. He denied that anyone had made any promise or prediction as to what his sentence would be. *Id*. 19:1-6. The conditions of his release were imposed *after* he entered his plea of guilty. *Id*. 22:21-22. The same day as his plea hearing,

the sentencing judge scheduled his sentencing for July 7, 2021. Dkt. 13. Lozano then filed several motions to postpone his sentencing. Dkts. 16, 18, 21, 25, 30. Thus, the length of Lozano's conditional release was in part the result of his own motions. Not only is it nonsensical to assert that Lozano would not have entered into his plea if he had known his conditional release time would not be counted toward his sentence, it is refuted by his testimony at the plea hearing. Lozano has not shown his counsel was ineffective.

Lozano also argues Counsel failed to "effectively reference [his] house arrest in support of a mitigated sentence." Dkt. 55-1 at 14. This is also factually wrong. *See* Sent. Tr. 15:20-16:23. And the sentencing judge did consider his time on bond and in compliance with his bond conditions. *See* Sent. Tr. 25:1-5. Lozano has not shown his counsel was ineffective.

Next, Lozano asserts Counsel was ineffective "for failing to object to the fact that the sentencing judge would not permit Petitioner's family members, who were present in court, to speak in support of Petitioner." Dkt. 55-1 at 14. Again, this is factually baseless. The sentencing judge did not prevent family members from speaking. *See* Sent. Tr. 18:25-19:5. The sentencing judge asked if anyone else wanted to speak on Lozano's behalf, and the sentencing judge stated he had reviewed the letters from family. *Id*. No one came forward to speak, and no one was prevented from speaking. *Id*. Lozano has not shown Counsel was ineffective.

Lozano argues Counsel was ineffective because he failed to investigate the case or allow Lozano to assist in preparation of a defense. Lozano asserts he did not seek out child pornography and was sent the "the images in question in an unsolicited manner by other individuals present in group chats." Dkt. 55-1 at 8-9. This argument, of course, conveniently ignores the child pornography he solicited—sometimes through threats—from MV. Lozano contends he downloaded the albums from "public dating chatrooms without knowing their contents." *Id*. at 9.

This contradicts his letter before his sentencing, in which he admits he had pleaded guilty to *viewing and downloading* child pornography. Dkt. 34 at 36. He also contends he never shared those images with anyone, his devices automatically synced with one another making it seem he had more images than he actually did, and he would have been able to help law enforcement find the individuals who had shared the child pornography. His allegation that he never shared the images with anyone is contradicted by the investigation. PSR ¶¶ 10, 39. He offers no specifics as to how he could have helped law enforcement—he merely states he could have provided law enforcement the usernames of those who shared the child pornography with him. He does not state he knew anyone's real identity. Finally, his argument here ignores the fact that Counsel brokered a deal in which he was not charged with manufacturing child pornography or any other additional crimes. His claims here are conclusory and contradictory. Lozano has not shown Counsel was ineffective.

Lozano asserts when MV "began messaging Petitioner, she sent him suggestive photographs without his prompting." *Id*. at 10. He again asserts he did know she was underage and she "physically appeared to be an adult based on [his] assessment of her development." *Id*. In his sentencing memorandum, Counsel did argue to the court that "[MV] appeared to be someone of adult age. She had all the looks of an appropriately aged young woman." Dkt. 34 at 7. In his own letter to the court, Lozano admitted he "*sought out* pictures of an under-age girl who I became infatuated with." Dkt. 34 at 36 (emphasis added). Lozano's assertions are legally insignificant and contradicted by the record. Lozano has not shown Counsel was ineffective.

Next, Lozano asserts Counsel failed to put the court on notice that his sentence "was not significantly lower than producers of child pornography routinely receive and that appellate courts consistently uphold below-guideline sentences in child pornography cases where the factors

considered pursuant to 18 U.S.C. § 3553(a) warranted such a sentence, such as in [his] case." Dkt. 55-1 at 10. This argument is also nonsensical. First, his claim "is that his conviction was the product of an unknowing, involuntary and unintelligent plea, which was the result of counsel's ineffectiveness, including but not limited to, counsel's failure to properly investigate Petitioner's case and adequately communicate with him." Dkt. 65-1 at 3. As his sentence happened after his plea was entered, this could not have contributed to his plea agreement. Second, Lozano's sentence was also a below-guidelines sentence. Lozano does not point to any Fifth Circuit case in which a sentence comparable to his was overturned on appeal. Lozano has not shown Counsel was ineffective. To the extent Lozano is attempting to show his sentence was procedurally or substantively unreasonable, and therefore he was prejudiced by his appeal waiver, his has failed. He has not shown his sentence was likely to be vacated on appeal.

Lozano argues he "was ignorant of the realities of sexual interactions between men and women due to his extremely religious upbringing which was based on the Bible." Dkt. 55-1. at 10. "As the Bible contains many confusing and socially unacceptable vignettes regarding incest and underage sexual interactions, [he] was not fairly taught right from wrong vis-à-vis sex." *Id.* (citing the Biblical book of Genesis 9:20-27, 11:29, 19:30-38, 24:15, 28:9, *ad nauseum*). Lozano also claims he was the victim of sexual abuse as a child and adult. *Id.* at 10-11. Lozano denied any sexual abuse to his therapist before his sentencing. Dkt. 34 at 15. Aspects of Lozano's socially sheltered upbringing were argued to the court in his Sentencing Memorandum. *See* Dkt. 34. But again, Lozano does not explain how this would make his plea agreement involuntary or his sentence unreasonable. Lozano has not shown Counsel was ineffective.

Lozano next asserts Counsel was ineffective for waiving his right to appeal to argue the applicability of *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017), without any contractual

consideration. According to Lozano, *Jenkins* held that a within-guideline child pornography sentence may be substantively unreasonable. Dkt. 55-1 at 11 (citing *Jenkins*, 854 F.3d at 192-193 ("[d]istrict courts should generally reserve sentences at or near the statutory maximum for the worst offenders"). First, *Jenkins* came out of the Second Circuit, and therefore has no authority here. Second, Lozano did not receive a within-Guideline sentence; his sentence was well below the Guideline range. *Jenkins* has no applicability here. Third, the plea agreement did not lack contractual consideration—the Government offered to forego any additional charges against Lozano in exchange for his guilty plea. Lozano has not shown Counsel was ineffective.

Finally, Lozano believes he has high functioning autism and alexithymia and argues Counsel was ineffective for failing to investigate and present evidence of Petitioner's mental health history and lack of competency. Dkt. 55-1 at 13. Lozano states the standard for legal incompetence—"A defendant is incompetent only when 'he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense,'" *Drope v. Missouri*, 420 U.S. 162, 171 (1975)—but his motion actually refutes his incompetency. First, his declaration is the only suggestion that he is incompetent. The use of his declaration in support of his motion is contrary to finding him incompetent. Second, in his declaration he suggests that he could have helped law enforcement find the individuals who provided him the child pornography, Decl. ¶ 21, which evidences he was capable of helping to prepare a defense. Moreover, he was examined by at least two therapists before his sentencing. He saw S. Harrell, LPC, LCDC, ASOTP, twice a month from May 2021 to at least November 2022. Dkt. 34 at 24. He was evaluated for his recidivism risk by Matthew L. Ferrara, Ph.D. in May 2021. Dkt. 34 at 11-23. Dr. Ferrara's report was filed with this court, and Dr. Ferrara made no mention— or raised any question of—Lozano's competency. *Id*. Finally, neither Lozano's letter to the court

before sentencing, nor his testimony at the plea hearing, nor his testimony at sentencing raised any question for anyone that Lozano was legally competent. *See* Dkt. 34 at 36-37; Dkt. 58 (Plea Tr.); Dkt. 57 (Sent. Tr.). In fact, all three indicate that Lozano did understand the proceedings against him, was able to consult with Counsel, and assist in his defense. Lozano's unsupported speculation that he was incompetent is refuted by the record.[2] Lozano has not shown Counsel was ineffective.

## VI.   HEARING

Lozano is not entitled to a hearing on this motion because his claims are frivolous, conclusory, and based on unsupported generalizations that are contradicted by the record. *See Harrison*, 910 F.3d at 826–27.

## VII.   CONCLUSION

Although Lozano reserved the right to challenge his conviction and sentence on the basis that Counsel was so ineffective that Lozano was deprived of his right to counsel, his challenge here is legally frivolous. It is obvious that Counsel negotiated a very good plea bargain with the Government—Lozano could have been charged much more severely than he was. Moreover, Counsel arranged a psychological assessment, to which the sentencing judge gave some credence. Sent. Tr. 24:21-25. Lozano was ultimately sentenced to 130 months of incarceration. Although that is a significant amount of time, he was facing up to 240 months of incarceration, and the guidelines recommended an incarceration range beginning at 210 months. In that context, Lozano's sentence was barely more than *half* of the statutory maximum and almost 40% less that

---

[2] To the extent that Lozano seeks to imply Counsel was ineffective for not investigating his alleged autism and alexithymia to present at sentencing, Counsel did suggest Lozano was "likely somewhere on the spectrum" in his Sentencing Memorandum, and the sentencing judge did take Lozano's mental status into consideration. Dkt. 34 at 1; Sent. Tr. 22:8-11 ("I don't doubt that whatever led you to engage in this kind of terrible behavior had some roots in your own trauma and your own limitations, but that doesn't excuse it and I know you know that.").

the minimum guideline recommendation. Nothing in Lozano's motion calls into question either the constitutionality of his conviction or his sentence.

## VIII.    RECOMMENDATIONS

For the reasons given above, the Magistrate Court respectfully **RECOMMENDS** Petitioner Fernando Lozano's Verified Petition for Writ of Habeas Corpus (Dkt. 55) be **DENIED**.

## IX.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

In this case, reasonable jurists could not debate the denial of the movant's section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the District Court not issue a certificate of appealability.

## X.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objection must specifically identify those findings or recommendations to which objections are being made.  The District Judge need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED August 28, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE